ATTORNEY FOR APPELLANT
Benjamen W. Murphy
Merrillville, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

## In the
## Indiana Supreme Court

FILED
Jan 10 2013, 11:40 am

CLERK
of the supreme court,
court of appeals and
tax court

No. 45S03-1206-CR-307

ANDRE GONZALEZ,                                    *Appellant (Defendant),*

v.

STATE OF INDIANA,                                  *Appellee (Plaintiff).*

Appeal from the Lake Superior Court, No. 45G02-9606-CF-180
The Honorable Clarence D. Murray, Judge
The Honorable Natalie Bokota, Magistrate

On Transfer from the Indiana Court of Appeals, No. 45A03-1108-CR-369

**January 10, 2013**

**Dickson, Chief Justice.**

After the defendant had fully served his sentence of imprisonment and probation for Child Solicitation, and during the ten-year period of his required registration as a sex offender, the statutory registration requirement was amended to require lifetime registration in certain circumstances. The defendant's offense fell within these circumstances. Upon completion of his ten-year registration requirement, the defendant unsuccessfully sought his removal from the Sex Offender Registry, claiming refuge under the Indiana Constitution's prohibition against ex post facto laws. We hold that, under the facts of this case and as applied to this defendant, the Ex

Post Facto Clause of the Indiana Constitution prohibits retroactive application of the lifetime registration requirement.

In 1997, the defendant, Andre Gonzalez, pled guilty to Child Solicitation, a class D felony.[1] Ind. Code § 35-42-4-6. The trial court imposed a three-year sentence, with eighteen months incarcerated and eighteen months on probation. Upon discharge from probation in 1999, the defendant was required to register as a sex offender for ten years pursuant to the Sex Offender Registration Act ("Act"). *See* Ind. Code § 5-2-12-5 (1996). In 2006, the legislature amended the Act to require certain sex offenders, based on the details of their crimes, to register with local law enforcement for life. *See, e.g.,* Ind. Code § 11-8-8-19(c) (requiring lifetime registration if offender over age eighteen and victim under age twelve at time of crime). In 2010, after the defendant had completed ten years of registration, he wrote the trial court, requesting the removal of his registration requirement. On January 27, 2011, the defendant, by counsel, filed a "Verified Petition to Remove Sex Offender Designation Pursuant to Ind. Code 11-8-8-22." Appellant's App'x at 34. The trial court denied the petition, and the defendant appealed. The Court of Appeals reversed. Gonzalez v. State, 966 N.E.2d 648 (Ind. Ct. App. 2012). The State sought transfer, urging that the decision of the Court of Appeals is inconsistent with precedent. We granted transfer and thus consider the appeal and issues as originally presented to the Court of Appeals. Ind. Appellate Rule 58(A).

In his appeal the defendant contends that, as applied to him, the 2006 amendments to the Act, which belatedly extend his registration requirement from ten years to life, violate the prohibition against ex post facto laws contained in the Indiana Constitution. Ind. Const. art. 1, § 24. Important in the defendant's claim is that there is no opportunity for review of the defendant's future dangerousness or complete rehabilitation. The State asserts that the availability of a review process is irrelevant to the ex post facto determination.

The Indiana Constitution states "No *ex post facto* law . . . shall ever be passed." *Id.* This provision prohibits, in relevant part, the passage of any law "which imposes a punishment for an

---

[1] At the time of the offense, the victim was the nine-year-old child of the defendant's live-in girlfriend. Appellant's App'x at 23.

act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." Weaver v. Graham, 450 U.S. 24, 28, 101 S. Ct. 960, 964, 67 L. Ed. 2d 17, 22 (1981) (quoting Cummings v. Missouri, 71 (4 Wall.) U.S. 277, 325–26, 18 L. Ed. 356, 364 (1867)) (internal quotation marks omitted). The policy underlying the Ex Post Facto Clause is to give effect to the fundamental principle that "persons have a right to fair warning of that conduct which will give rise to criminal penalties." Armstrong v. State, 848 N.E.2d 1088, 1093 (Ind. 2006) (quoting Marks v. United States, 430 U.S. 188, 191, 97 S. Ct. 990, 992–93, 51 L. Ed. 2d 260, 265 (1977)).[2]

In evaluating an ex post facto claim under the Indiana Constitution we apply what is commonly known as the "intent-effects" test.[3] Wallace v. State, 905 N.E.2d 371, 378 (Ind. 2009). Under the first prong of this test, we determine what type of scheme the legislature intended the statute to establish. Id. (citing Smith v. Doe, 538 U.S. 84, 92, 123 S. Ct. 1140, 1146–47, 155 L. Ed. 2d 164, 176 (2003)). If the legislature's intention was to impose punishment, the inquiry ends and an ex post facto violation is found. If, however, the legislature's intention was regulatory or civil in nature, then the court must move to the second prong of the inquiry to determine whether the effects of the statute are so punitive as to transform the regulatory scheme into a criminal penalty. See id.

First, "it is difficult to determine legislative intent since there is no available legislative history and the Act does not contain a purpose statement." Wallace, 905 N.E.2d at 383 (quoting Spencer v. O'Connor, 707 N.E.2d 1039, 1043 (Ind. Ct. App. 1999)). However, we are aided by the principle that every statute stands before us clothed with the presumption of constitutionality until that presumption is clearly overcome by a contrary showing. State v. Rendleman, 603

---

[2] The defendant makes his ex post facto challenge solely on the basis of the Indiana Constitution and not the U.S. Constitution. See Appellant's App'x 35 (referencing only the Indiana Constitution in his Petition); Appellant's Br. at 7 ("Andre only raises a state claim which seems to offer more protection.").

[3] While Indiana courts have adopted an approach consistent with the federal standard through use of the intent-effects test, see Hevner v. State, 919 N.E.2d 109, 111 (Ind. 2010); Wallace v. State, 905 N.E.2d 371, 378 (Ind. 2009), the defendant is correct in his assertion that "Indiana does not use the heightened standard of clearest proof . . . as used by the United States Supreme Court . . . ." Appellant's Br. at 7; Wallace, 905 N.E.2d at 378 n.7 ("The heightened standard of clearest proof is not consistent with this State's decisional law."). Thus, our analysis under the intent-effects test is independent from that of the federal standard. See Wallace, 905 N.E.2d at 378.

N.E.2d 1333, 1334 (Ind. 1992). The defendant has put forth no evidence of punitive intent on the part of the legislature with respect to the 2006 amendments to the Act. Therefore, as this Court has consistently done, we assume without deciding that, in passing the Act, "the legislature's intent was to create a civil, non-punitive, regulatory scheme." State v. Pollard, 908 N.E.2d 1145, 1150 (Ind. 2009); *see also* Wallace, 905 N.E.2d at 379.

Second, we consider whether the effects of the Act, as applied to the defendant, are so punitive in nature as to constitute a criminal penalty. Wallace, 905 N.E.2d at 378. In evaluating a statute's effects we are guided by the seven factors listed in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 83 S. Ct. 554, 9 L. Ed. 2d 644, (1963).

> [1] Whether the sanction involves an affirmative disability or restraint, [2] whether it has historically been regarded as a punishment, [3] whether it comes into play only on a finding of scienter, [4] whether its operation will promote the traditional aims of punishment—retribution and deterrence, [5] whether the behavior to which it applies is already a crime, [6] whether an alternative purpose to which it may rationally be connected is assignable for it, and [7] whether it appears excessive in relation to the alternative purpose assigned.

Wallace, 905 N.E.2d at 379 (alterations in original) (quoting Mendoza-Martinez, 372 U.S. at 168–69, 83 S. Ct. at 567–68, 9 L. Ed. 2d at 661). No one factor is determinative. We address each factor in turn, noting that "our task is not simply to count the factors on each side, but to weigh them." *Id.* (quoting State v. Noble, 829 P.2d 1217, 1224 (Ariz. 1992)) (internal quotation marks omitted).

*1. Affirmative Disability or Restraint*

The first factor is "[w]hether the sanction involves an affirmative disability or restraint." Mendoza-Martinez, 372 U.S. at 168, 83 S. Ct. at 567, 9 L. Ed. 2d at 661. We have found that the Act imposes significant affirmative obligations and a severe stigma on those to whom it applies. Lemmon v. Harris, 949 N.E.2d 803, 811 (Ind. 2011) [hereinafter Harris]; Jensen v. State, 905 N.E.2d 384, 391 (Ind. 2009); Wallace, 905 N.E.2d at 379. The duties on the defendant are significant: he must provide a wide array of personal information which is made public, Ind. Code § 11-8-8-8, must register in person with local law enforcement and have his photograph taken annually, Ind. Code § 11-8-8-14(a), must re-register upon changes in residential or employment

status, Ind. Code § 11-8-8-11, and must carry valid identification at all times, Ind. Code § 11-8-8-15, among other requirements.

The State contends that, because the defendant's offense, Child Solicitation, has always been a qualifying sex offense, and because he was already required to register as a sex offender at the time of his discharge from probation, *see* Ind. Code § 5-2-12-5 (1996), there is no further burden or restraint placed on the defendant aside from a change in the duration of the registration requirement. Appellee's Br. at 7–8. However, this Court has found that an increase to a lifetime registration requirement was a particularly important additional restraint which leans in favor of treating the effects of the Act as punitive. Harris, 949 N.E.2d at 811. Here, we again find that the extension of such intrusive registration obligations to a lifetime requirement is an additional affirmative restraint which weighs in favor of treating the effects of the Act as punitive.

## 2. *Sanctions That Have Historically Been Considered Punishment*

The next factor, "whether [the sanction] has historically been regarded as a punishment," Mendoza-Martinez, 372 U.S. at 168, 83 S. Ct. at 567, 9 L. Ed. 2d at 661, which involves the dissemination and widespread availability of offenders' personal information, has been found to resemble the historical punishment of "shaming." *See* Harris, 949 N.E.2d at 811; Jensen, 905 N.E.2d at 392. By extending the duration of the registration requirement from ten years to life, the Act has the effect of increasing shame on the defendant, which weighs in favor of punitive treatment.

## 3. *Finding of Scienter*

In applying the third factor, "whether [the statute] comes into play only on a finding of *scienter*," Mendoza-Martinez, 372 U.S. at 168, 83 S. Ct. at 567, 9 L. Ed. 2d at 661, our focus is whether the sanction is linked to a showing of *mens rea*. If so, it is more likely to be considered punishment. Here, the defendant's criminal conviction for Child Solicitation is a prerequisite for

registration, and this offense requires a showing of *mens rea*,[4] as do the vast majority of offenses to which the Act applies.  Wallace, 905 N.E.2d at 381.  Therefore, this factor also weighs in favor of treating the effects as punitive.

## 4. Traditional Aims of Punishment

The fourth factor considers "whether [the statute's] operation will promote the traditional aims of punishment—retribution and deterrence."[5]  Mendoza-Martinez, 372 U.S. at 168, 83 S. Ct. at 567, 9 L. Ed. 2d at 661.  The more the Act promotes these traditional aims of punishment, the more likely it is to be punitive.  Harris, 949 N.E.2d at 812 (citing Jensen, 905 N.E.2d at 393).  Although lifetime registration required by the Act has a likely deterrent effect and promotes community condemnation of offenders, it also serves a valid regulatory function by providing the public with information related to community safety.  As to the relative punitive or regulatory values served by this factor, we are guided by prior decisions of this Court that have not found deterrent and retributive effects as to a defendant claiming that the increased registration period violates the Ex Post Facto Clause, and that have interpreted this factor as non-punitive as to such a defendant.  *Compare* Harris, 949 N.E.2d at 812 (offense required registration both before and after 2007 amendments to Act; factor favored non-punitive treatment), *with* Wallace, 905 N.E.2d at 381–82 (offense did not require registration at time committed; factor favored punitive treatment).  This factor weighs in favor of treating the effects of the Act as non-punitive.

## 5. Applicability Only to Criminal Behavior

The fifth factor for consideration is "whether the behavior to which [the statute] applies is already a crime."  Mendoza-Martinez, 372 U.S. at 168, 83 S. Ct. at 567, 9 L. Ed. 2d at 661.  Alt-

---

[4] See Indiana Code Section 35-42-4-6(3) (1994), the law in place at the time the defendant committed his crime:

> A person eighteen (18) years of age or older who *knowingly or intentionally* solicits a child under twelve (12) years of age to engage in any fondling or touching intended to arouse or satisfy the sexual desires of either the child or the older person commits child solicitation.

*Id.* (emphasis added).

[5] It is important to note that under our state constitution the primary aim of punishment is rehabilitation, not retribution or deterrence.  Ind. Const. art. 1, § 18.

6

hough the registration requirement is triggered exclusively by criminal behavior, the defendant's offense, Child Solicitation, was already a registration-triggering offense at the time of commission. Our prior cases, in analogous circumstances, have weighed this factor in favor of treating the enhanced registration period as non-punitive as applied. Harris, 949 N.E.2d at 812; Jensen, 905 N.E.2d at 393. We decline to depart from our precedent.

*6. Advancing Non-Punitive Interest*

Under the sixth factor, we determine "whether an alternative purpose to which [the statute] may rationally be connected is assignable for it." Mendoza-Martinez, 372 U.S. at 168–69, 83 S. Ct. at 567–68, 9 L. Ed. 2d at 661. Because the Act advances the legitimate regulatory purpose of protecting the public from repeat sexual crime offenders, our cases have consistently treated this factor as non-punitive. Harris, 949 N.E.2d at 812; Pollard, 908 N.E.2d at 1152–53; Jensen, 905 N.E.2d at 393; Wallace, 905 N.E.2d at 383. Likewise, here, this factor weighs in favor of treating the effects of the Act as non-punitive.

*7. Excessiveness in Relation to Articulated Purpose*

The seventh and final factor to be considered is "whether [the statute] appears excessive in relation to the alternative purpose assigned." Mendoza-Martinez, 372 U.S. at 169, 83 S. Ct. at 568, 9 L. Ed. 2d at 661. Our previous cases have reached differing results based on the outcome of this final factor.

In Wallace, we determined the seventh factor to be punitive for a defendant convicted and released prior to the Act's 1994 passage. In so doing, we found it significant that "the Act provides no mechanism by which a registered sex offender can petition the court for relief from the obligation of continued registration and disclosure. Offenders cannot shorten their registration or notification period, even on the clearest proof of rehabilitation." Wallace, 905 N.E.2d at 384. In Jensen, this Court found that the effects of the Act applied differently to Jensen than they had to Wallace. We first noted that the 2006 amendments had changed nothing with regard to

Jensen's actual disclosure requirements; they had changed only the duration of the requirement.[6] Jensen, 905 N.E.2d at 394. Second, Jensen, unlike Wallace, was able to petition the court after ten years for reconsideration of his status as a sexually violent predator ("SVP"). *Id.* (citing Ind. Code § 35-38-1-7.5(g) (2006)). We thus concluded that the seventh factor weighed in favor of non-punitive treatment. *Id.*; *see also* Harris, 949 N.E.2d at 812–13 (finding seventh factor non-punitive due to availability of individualized review of SVP status under Indiana Code Section 35-38-1-7.5(g)).

Here, unlike defendants Jensen and Harris, the defendant is not an SVP. Under Indiana law, there are two avenues by which a sex offender may qualify as an SVP. First, a person can qualify as an SVP by reason of a "mental abnormality or personality disorder that makes the individual likely to repeatedly commit a sex offense." Ind. Code § 35-38-1-7.5(a). This determination may be made by the court upon request by the prosecuting attorney. Ind. Code § 35-38-1-7.5(e) (providing that, if it grants the motion of the prosecuting attorney, the court shall conduct a hearing at which two court-appointed psychologists or psychiatrists with expertise in criminal behavior disorders evaluate the person and testify). Second, a person may become an SVP by virtue of the offense committed. Ind. Code § 35-38-1-7.5(b). Here, the defendant neither had a hearing to determine SVP status under subsection (a), nor committed a qualifying offense under subsection (b). Rather, his lifetime registration requirement arose under Indiana Code Section 11-8-8-19(c) due to the nature of his offense and the fact that, when committed, the defendant was at least eighteen years of age and the victim less than twelve years of age. Thus, unlike Jensen and Harris, the defendant has no available channel through which he may petition the trial court for review of his future dangerousness or complete rehabilitation. *Compare* Ind. Code § 11-8-8-19(b) (providing that an SVP "is required to register for life"), *and* Ind.

---

[6] Here, as in Jensen, the effect of the 2006 amendments was to lengthen the duration of the registration requirement without adding any additional restraints or burdens. However, the defendant's situation here differs from that of Jensen in that, at the time the defendant committed his crime in 1996, the Act was less restrictive than it was at the time of Jensen's crime in 1998. In 1996, limited information was available on offenders, the verification process was minimal, and the availability of information to the public was limited. Amendments to the Act in 1998 imposed heavy restraints on offenders related to notification requirements and verification of the disclosed information. Wallace, 905 N.E.2d at 375–76 (noting that the 1998 amendments require disclosure of an offender's fingerprints, photograph, address, complete criminal history, and information concerning treatment of mental disorders, and that the 1998 amendments require local law enforcement to verify the offender's current residence by mailing a form to the offender once per year, which the offender must return in person).

Code § 35-38-1-7.5(g) (allowing an SVP to "petition the court to consider whether the person should no longer be considered a sexually violent predator"), *with* Ind. Code § 11-8-8-19(c) (providing that a sex offender falling under the section [i.e. a *non*-SVP] "is required to register for life"), *and* Ind. Code § 11-8-8-22(j) (allowing a non-SVP asserting a claim of ex post facto punishment to petition the trial court to remove the designation of sex offender or to permit registration under less restrictive conditions). Future dangerousness or complete rehabilitation are not grounds upon which a non-SVP could base such a petition.

The State contends that a distinction must be made between an SVP whose registration requirement is based on his or her mental state and someone in the defendant's position whose increased registration requirement is "based on facts admitted by him . . . that do not change with the passage of time, or with rehabilitation." Appellee's Trans. Br. 6–7. As noted above, this seventh Mendoza-Martinez factor requires that we consider whether the retroactive application appears excessive *in relation to the alternative purpose assigned*. The alternative purpose is protection of the public from repeat sexual crime offenders. The degree to which a prior offender has been rehabilitated and does not present a risk to the public is thus integral to our evaluation of whether an extension of the ten-year registration requirement is reasonable in relation to such public protection. The availability of meaningful review of an offender's future dangerousness is therefore germane to the determination of whether a statute's effects are excessive. Under the procedures contained in Indiana Code Section 11-8-8-22, the sole avenue of relief available to a non-SVP defendant, a trial court may, if it chooses, summarily dismiss an offender's petition without ever setting a hearing.[7] Ind. Code § 11-8-8-22(e)(1). Further, Indiana Code Section 11-8-8-22 may be utilized only when there is an ameliorative change in federal or state law applicable to an offender's prior conduct, Ind. Code § 11-8-8-22(b), (g), or when an offender files an ex

---

[7] While it is true that an SVP's petition under Indiana Code Section 35-38-1-7.5(g) may also be dismissed by the trial court without a hearing, *id.* ("A court may dismiss a petition filed under this subsection or conduct a hearing to determine if the person should no longer be considered a sexually violent predator."), that section also expressly allows an SVP to repeatedly file such petition "not more than one (1) time per year." *Id.* Thus, if an SVP's petition is dismissed by the trial court, the SVP has the opportunity to re-petition annually. *Id.* But if a non-SVP's petition is summarily dismissed by the trial court, Indiana Code Section 11-8-8-22 offers no similar express opportunity to re-petition the trial court unless or until there is a further ameliorative or punitive change in the law. The statute does not expressly permit (nor does it deny) a non-SVP the opportunity to file repeated requests for review of a lifetime registration requirement based on a claim of ex post facto punishment. We find this distinction to magnify the disparity as to the availability of *meaningful* review.

post facto claim, Ind. Code § 11-8-8-22(j). Neither of these avenues of relief relates to an offender's future dangerousness in relation to the alternative purpose assigned, protection of the public.

In the present case, the defendant, Gonzalez, as a non-SVP, may not predicate his request for relief on the grounds that he has been rehabilitated and presents no risk to the public. And the trial court has refused to grant a hearing despite his repeated attempts to seek the trial court's review of his claim of ex post facto punishment. Thus, as to this defendant, we find that the retroactive imposition of a lifetime registration requirement appears excessive in relation to the purpose of protecting the public from repeat sexual crime offenders. For these reasons, we find this seventh factor weighs slightly in favor of treating the enhanced registration period as punitive rather than non-punitive.

**Conclusion**

We apply the seven Mendoza-Martinez factors to guide our evaluation of the defendant's claim that, as applied to him, the retroactive imposition of a lifetime registration period violates the Ex Post Facto Clause. Our task is not merely to determine whether there are more punitive or non-punitive factors, but to consider them collectively to determine whether the application of the challenged statute's effects upon the defendant are so punitive in nature as to constitute a criminal penalty. *See* Wallace, 905 N.E.2d 378–79. The underlying conviction of the defendant for Child Solicitation was for a D felony, the lowest class of felony under Indiana's criminal code. Although the defendant was sentenced to the maximum term of three years, eighteen months were suspended to probation. Because of the nature of the offense, the then-prevailing statutes required him to register as a sex offender for ten years, which registration he completed. As we collectively weigh the punitive and non-punitive nature of the seven factors as they apply to this defendant and his circumstances, we find that to apply the 2006 amendments so as to subject this defendant to a lifetime registration requirement violates the Ex Post Facto Clause of the Indiana Constitution.

We reverse the denial of the defendant's petition to remove the lifetime registration re-

10

quirement and remand for further proceedings consistent with this opinion.

David, Massa, Rush, JJ., concur.

Rucker, J. concurs in result.